# IN THE SUPERIOR COURT OF DELAWARE

MARK BOISSONNEAULT,      )
         Plaintiff,        )
                          )
     v.                     )      Civ. Act. No. N24C-08-300 DJB
                          )
DELAWARE PODIATRIC      )
MEDICINE, P.A.,          )
         Defendant.     )

Date Submitted:  November 20, 2024
Date Decided: December 9, 2024

## Memorandum Opinion

*On Defendant's Motion to Dismiss –* **DENIED** *in part,* **GRANTED** *in part*

*Tara D. McManamy, Esquire*, Margolis Edelstein, Wilmington, Delaware, attorney for Plaintiff

*Mark A. Denney, Esquire*, Baird, Mandalas, Brockestedt & Federico, LLC, attorney for Defendant

**BRENNAN, J.**

This breach of contract action arises from an employment agreement ("Agreement") between Plaintiff Mark Boissonneault and Defendant Delaware Podiatric Medicine, P. A. (hereinafter "DPM"). Following a year of employment at DPM, Plaintiff was terminated. In his Complaint, Count I alleges breach of contract; Count II alleges a cause of action under the theory of *quantum meruit*. Defendant moved pursuant to Superior Court Civil Rule 12(b)(6) for dismissal, arguing Plaintiff has failed to plea a claim upon which relief can be granted. Because Count I sets forth the requisite elements of breach of contract under Delaware's notice pleading standard, this claim survives. With respect to Court I, Defendant's motion is **DENIED**. However, because in this factual scenario Plaintiff cannot simultaneously plead both a cause of action for breach of contract and *quantum meruit*, Count II is dismissed and Defendant's motion is **GRANTED**.

## I. FACTS[1]

The parties entered into the Agreement "on or around January 6, 2023."[2] Per the Agreement, Plaintiff began working as a podiatrist at DPM on July 10, 2023.[3] The Agreement provided Plaintiff employment at DPM for a period of three years.

---

[1] The facts that form the basis of this Opinion are gleamed from the Complaint and all well-pleaded allegations are accepted as true, given the standard of review for a motion to dismiss. *Vinton v. Grayson*, 189 A.3d 695, 700 (Del. Super. 2018).

[2] Plaintiff's Complaint ("Complaint") at ¶ 13, D.I. 1.

[3] *Id.* at ¶¶6-10.

Plaintiff's employment could only be terminated by DPM prior to the end of that term for the following reasons:

> (1) [m]utual agreement of Employer and Employee; (2) Employee's death; (3) Employee's 'permanent disability;' (4) Employee's retirement; (5) Employer's discharge of Employee for 'Due Cause;' or (6) Employer's ceas[ing] to conduct business for any reason.[4]

The Agreement defines "Due Cause" as any of the following:

> (1) "a material breach of any Employee's obligations; (2) willful or gross negligent or willful or gross misconduct resulting in harm to a patient and/or Employer; (3) Employee's conviction of a 'felony or any crime or offense involving dishonesty or moral turpitude;' (4) 'the loss, suspension, or withdrawal of Employee's license to dispense or prescribe narcotic drugs in Delaware;' (5) 'the loss, suspension, or withdrawal of Employee's license to practice podiatric medicine in Delaware;' or (6) 'the loss, suspension, or withdrawal of Employee's rights to participate in Medicare.'[5]

Per the Agreement, DPM was to pay Plaintiff a gross annual salary of $135,000.[6] The Agreement additionally provided Plaintiff with an incentive, or bonus, if DPM received renumeration from Plaintiff's clients in excess of $270,000 in one year.[7] In that event, Plaintiff's bonus would equal 35% of any amount received more than $270,000.[8] If terminating an employee for due cause, the

---

[4] *Id.*, at ¶¶ 13, 15; Exhibit A, Section 15.
[5] *Id.*, at ¶16; Exhibit A, Section 15.
[6] *Id.*, at ¶ 19; Exhibit A, Section 8.
[7] *Id.*, at ¶ 20; Exhibit A, Section 10.
[8] *Id.*

Agreement required DPM to provide written notice to "specify the act or acts" giving rise to termination.[9]

Plaintiff was terminated after almost one year of employment with DPM.[10]

DPM delivered a termination letter to Plaintiff, which read:

> This letter shall serve as a termination notice pursuant to your Employment Agreement with Delaware Podiatric Medicine, P.A., dated January 5, 2023. Pursuant to the terms of [the Agreement] as well as this termination letter, we are allowing you sixty (60) days notice to effectively seek new employment. As such, July 29, 2024 [sic] will be your last day of work for this practice. These conditions are subject to and binding by all of the terms of the Employment Agreement including continued patient case, confidentiality of records and, *inter alia*, return of all property owned by Delaware Podiatric Medicine.[11]

Plaintiff was given verbal explanation for his termination: that his employment "did not work out" because "sometimes it is just not a good fit."[12]

Plaintiff's Complaint alleges DPM failed "to articulate which of the six specified circumstances set out in Section 15 of the Employment Contract" constituted cause for termination.[13] Plaintiff alleges DPM does not have sufficient due cause and avers he sent a demand letter to DPM on July 3, 2024 seeking an

---

[9] *Id.*, at ¶ 17-8.
[10] *Id.*, at ¶ 33.
[11] *Id.*, at ¶ 33, 35; Exhibit D.
[12] *Id.*
[13] *Id.*, at ¶ 37.

explanation.[14]  Instead of replying to the demand letter, DPM immediately terminated Plaintiff before the sixty day time period ended.[15]

Plaintiff's breach of contract claim alleges a breach in two manners:  that DPM terminated the contract early in violation of the Agreement and that Plaintiff is still owed $68,635.76 from DPM upon termination in the form of incentives, or bonus pay, withheld.[16]  In total, Plaintiff seeks $271,135.76, plus attorney fees, costs and interest which Plaintiff alleges reflects both the incentives owed and his remaining salary.

## II.    PROCEDURAL HISTORY

In lieu of an Answer, DPM filed the instant motion to dismiss pursuant to Superior Court Civil Rule 12(b)(6) on September 26, 2024.[17]  Plaintiff responded in opposition on October 16, 2024.   Defendant's Reply was filed October 21, 2024. Oral argument was held on November 20, 2024.  This is the Court's decision.

## III.    STANDARD OF REVIEW

Under Superior Court Civil Rule 12(b)(6), the court must decide whether there are any reasonably conceivable set of circumstances, susceptible of proof, upon

---

[14] *Id.*, at ¶ 38-9.
[15] *Id.*, at ¶ 40.
[16] *Id.*, at ¶¶ 41, 46-47.
[17] D.I. 5.

which a plaintiff may recover.[18]  Pursuant to Rule12 (b)(6), the Court will accept all well pleaded factual allegations as true, accept even vague allegations as "well pleaded" if they give the opposing party notice of the claim, and draw all reasonable inferences in favor of the non-moving party.  The Court will not dismiss the claims unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[19]  While the Court cannot accept unsupported, conclusory allegations or draw unreasonable inferences in favor of the non-moving party,[20] "if any reasonable conception can be formulated to allow Plaintiffs' recovery, the motion must be denied."[21]

## IV.  ANALYSIS

DPM alleges Plaintiff's breach of contract claim should be dismissed for failure to establish the requisite elements, specifically damages.[22]  DPM submits the Complaint fails to set forth how the incentive and compensation provisions of the Agreement were violated, as Plaintiff "does not allege how or when the [$270,000]

[18] *Vinton v. Grayson*, 189 A.3d 695, 700 (Del. Super. 2018) (quoting Super. Ct. Civ. R. 12(b)(6)).

[19] *Id.* (quoting *Central Mortgage Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.3d 531, 535 (Del. 2011)).

[20] *Intermec IP Corp. v. TransCore, LP*, 2021 WL 3620435, at *11 (Del. Super. Ct. Aug. 16, 2021) (citing *Prince v. E.I. DuPont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011), overruled on other grounds by *Ramsey v. Ga. S. Univ. Advanced Dev. Ctr.*, 189 A.3d 1255, 1277 (Del. 2018)).

[21] *Vinton*, 189 A.3d at 700 (citing *Cent. Mortg. Co.*, 27 A.3d at 535).

[22] Mtn to Dismiss the Compl., at ¶ 9; D.I. 5.

threshold was ever reached."[23]  Further, DPM highlights the inconsistencies in the Complaint for bringing actions both in breach of contract and *quantum meruit*.[24] Defendant submits that Plaintiff has failed to plead damages resulting from his termination, thus failing to plead a required element of breach of contract.[25]  Finally, Defendant argues the *quantum meruit* claim fails because it relies on obligations pursuant to the Agreement, which Plaintiff fails to show applies.[26]

Plaintiff's opposition is based upon the premise that under Delaware's notice pleading standards, the Complaint sets forth sufficient information for which DPM can form a defense.  Plaintiff argues any specific details missing from the Complaint are matters for discovery and future motion practice.  Plaintiff further suggests that Defendant "fails to address the most significant breach in this matter – *Plaintiff was prematurely terminated from his employment.*"[27]  Plaintiff submits the Complaint adequately informs the basis of the breach of contract claim regarding Plaintiff's termination and that Defendant's motion itself demonstrates a detailed understanding of "the crux of [the bonus payment] argument of Plaintiff's claim."[28] While Plaintiff acknowledges he cannot simultaneously bring a breach of contract

---

[23] *Id.*
[24] *Id.*, at ¶ 10 (emphasis added).
[25] Defendant's Reply in Support of its Mtn. to Dismiss, at ¶ 3; D.I. 9.
[26] *Id.*, at ¶ 6.
[27] Plaintiff's Opp.to Defendant's Mtn. to Dismiss, at ¶ 10; D.I. 8.
[28] *Id.*

and *quantum meruit* action, he defends Count II arguing it was brought in the alternative.[29]

### A. Breach of Contract

Under Delaware's notice pleading standard, a plaintiff's complaint must plead a "short and plain statement of the claim showing that the pleader is entitled to relief."[30]  A complaint alleging breach of contract must show the existence of a contract, allege a breach of that contract, and damages resulting from the alleged breach.[31]  A plaintiff is not required to plead evidence demonstrating the requisite elements.[32]  A complaint is sufficient so long as the short and plain statement gives Defendant fair notice of the claim.[33]  With proper notice of the allegations,  the burden shifts to a defendant to determine details of the cause of action through discovery; a plaintiff is only required to "allege facts that, if true, state a claim upon which relief can be granted."[34]

A breach of contract claim survives a motion to dismiss unless "it appears with reasonable certainty that the plaintiff cannot prevail on any set of facts which

---

[29] *Id.*, at ¶ 13.
[30] *VLIW Technology, LLC v. Hewlett-Packord Co.*, 840 A.2d 606, 611 (Del. 2003).
[31] *GMG Capital Invs., LLC v. Athenian Venture Partners I. L.P.*, 36 A.3d 776, 779 (Del. 2012).
[32] *VLIW*, 840 A.2d, at 611.
[33] *Id.*
[34] *Id.*

might be proven to support the allegations in the complaint."[35] Delaware applies a conceivability, rather than plausibility, standard when determining whether a complaint is properly plead.[36] A complaint conceivably pleads breach of contract when alleging specific contractual obligations of the defendant, describes how defendant's conduct constituted a breach of those obligations, and articulates damages resulting from the breach.[37]

Plaintiff's Complaint meets the low threshold requirement to survive a motion to dismiss as the elements of a breach of contract claim are conceivably pled.[38] The Complaint references and attaches the Agreement to establish the existence of a contract.[39] Citing the Agreement, the Complaint delineates how the Agreement could be contractually terminated, and alleges Plaintiff's termination was without due cause.[40] Finally, the Complaint alleges that "as a result of DPM's breach, Plaintiff has and will sustain financial harm associated with the remainder of the

---

[35] *Id.*, at 615; *see also Cent. Mortg. Co.*, 27 A.3d at 536 (noting that breach of contract claims "may, as a factual matter, ultimately prove impossible for the plaintiff to prove […] at a later stage of a proceeding, but that is not the test to survive a motion to dismiss").

[36] *Cent. Mortg. Co.*, 27 A.3d at 537-8 (holding that a breach of contract complaint provided fair notice to defendant because "the Complaint also alleges, and it bears notation, that on 47 separate occasions, [Defendant] in fact repurchased loans," which properly identifies the alleged breach under the Agreement).

[37] *VLIW*, 840 A.2d, at 612-3.

[38] *Cent. Mortg. Co.*, 27 A.3d at 540 (explaining "[Plaintiff's] pleadings regarding notice satisfy the minimal standards requirement at this early state of litigation").

[39] Compl. at ¶ 11; D.I. 1.

[40] *Id.*, at ¶ 15-6.

Employment Contract's term."[41]   Plaintiff further specifies that financial harm resulting from the termination includes the owed compensation from the bonus payment structure within the Agreement.[42]

The Complaint does allege facts regarding Plaintiff's notice of a discrepancy in the earned monthly bonus payments.   The Complaint details how this was discovered – following an incident regarding a needle stick injury in the course of his employment – and alleges facts surrounding his conversation with Dr. Hanlon at DPM in relation to his bonus claim.[43]   Under Delaware's notice pleading standard, this is sufficient at this stage in the proceedings.

DPM is correct that the Complaint does not specifically detail how Plaintiff's bonus and incentive pay was triggered.  However the Complaint puts Defendant on sufficient notice of the breach of contract claim and it is Plaintiff's burden to ultimately establish this allegation in the discovery practice.  If they do not, this is an issue that can be raised in a motion for summary judgment following the close of discovery.   Therefore, Plaintiff's Complaint has conceivably pled the requisite elements such that Defendant's Motion to Dismiss is **DENIED.**

---

[41] *Id.*, at ¶ 15.
[42] Plaintiff's Opp. at ¶ 10; D.I. 8.
[43] Compl., at ¶ 26-29; D.I. 1.

### B.     *Quantum Meruit*

*Quantum meruit* claims allow for a restitutionary theory of recovery available in quasi-contract relationships.[44]  A Quasi-contract is "one where the law will infer the existence of a contractual relationship without regard to the actual intention of the parties."[45]  To properly plead *quantum meruit*, Plaintiff must show that services were performed under circumstances that should have put Defendant on notice that the performing party expected to receive a benefit in return.[46]  Because *quantum meruit* is a quasi-contract theory, such a claim will only succeed in the absence of an express contract, "if it is determined that the relationship of the parties and the services involved in this claim are the subject of an express contract, the terms of that contract control and there is no occasion to pursue the theory of *quantum meruit*."[47]

Plaintiff concedes that the *quantum meruit* claim is an alternative pleading if the Agreement is found inapplicable.[48]  Even if Plaintiff conceivably plead a quasi-

---

[44] *Middle States Drywall, Inc. v. DMS Properties-First, Inc., et. al.*, 1996 WL 453418, at *10 (Del. Super.).

[45] *LCT Capital, LLC v. NGL Energy Partners LP*, 2022 WL 17851423, at *4 (Del. Super.).

[46] *State ex rel. Structa-Bond, Inc. v. Mumford & Miller Concrete, Inc.*, 2002 WL 31101938, at *9 (Del. Super.).

[47] *Alpha Contracting Services, Inc., v. Professional Retail Services*, 2019 WL 151482, at *1 (Del. Super.); *Chrysler Corp. v. Airtemp Corp.*, 426 A.2d 845, 855 (Del. Super. 1980).

[48] Plaintiff's Opp. at ¶ 13; D.I. 8.

contract relationship between the parties, because Plaintiff adequately pleads the existence of an express contract, the *quantum meruit* claim cannot also survive Defendant's Motion to Dismiss under these factual circumstances. Although the Complaint alleges "Plaintiff was working for Defendant with the expectation of being compensated for services for a period of three years, with incentives and bonuses provided for by Defendant," such an expectation did not arise from a quasi-contractual relationship.[49] Instead, Plaintiff's employment expectations stem from the Agreement.

As such, Plaintiff's Complaint establishes the existence of an express contract, not a quasi-contract, and Defendant's Motion to Dismiss is **GRANTED** as to Count II, the *quantum meruit* claim.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is **DENIED** in part (Count I) and **GRANTED** in part (Count II).

**IT IS SO ORDERED.**

_____
Danielle J. Brennan, Judge

---

[49] *Id.*, at ¶ 14 (emphasis added).